**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **CV 12-00923 SJO (SHx)**          DATE: **March 13, 2013**

TITLE:        **Ken Waterhouse, et al. v. City of Lancaster**

========================================================================
PRESENT: **THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                    Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                          Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 35]**; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** [Docket No. 29]

This matter comes before the Court on two cross motions for summary judgment, filed by Plaintiffs Ken Waterhouse ("Waterhouse"), Sherwood MHP LLC, and Waterhouse Management Corp. (collectively, "Plaintiffs") ("P Motion"), and by Defendant City of Lancaster ("Defendant") ("D Motion") on January 22, 2013. Oppositions and replies were filed to both motions. The Court found these matters appropriate for disposition without oral argument and vacated the hearings scheduled for February 19 and 26, 2013. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion and **DENIES** Plaintiffs' Motion.

I.        FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in material dispute. Sherwood Mobilehome Park ("Sherwood") is a mobile home community that has operated in Lancaster since September 1988. (Pls.' Statement of Genuine Issues ("PGI") ¶ 1, ECF No. 49-1.) Plaintiffs purchased Sherwood on December 3, 2004. (PGI ¶¶ 3-6.) Ruben A. Garcia ("Mr. Garcia") has been the Vice President of operations for Waterhouse since Plaintiffs acquired the property. (PGI ¶ 7.)

As of the time of its founding, Sherwood operated as a an "Adult Park" excluding families with children. (Def.'s Statement of Genuine Issues ("DGI") ¶ 8, ECF No. 48.) Around March 1989 the rules were changed to allow children, so long as at least one person aged 55 or older lived in each mobile. (DGI ¶ 9.) Plaintiffs proposed a strengthening of these rules on September 13, 2005, though, when Mr. Garcia wrote a letter proposing amendments to Sherwood's Rules and Regulations that would add a requirement that all additional members in each household be 35 years of age or older. (Decl. of Elizabeth Brubaker in Supp. of D Mot. ("Brubaker Declaration") ¶¶ 7-9, ECF No. 39.) The parties do not agree whether such a rule change was in fact implemented. (PGI ¶¶ 8-9.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>          **DATE:** <u>March 13, 2013</u>

This proposed increased stringency did not last long, however: on May 14, 2007, Mr. Garcia again wrote a letter to Sherwood residents proposing an elimination of its age-specific residential rules in full, which would allow all qualified residents, regardless of age, to reside in the community ("All-Age Rule"). (PGI ¶¶ 10-12; DGI ¶¶ 19-20.) Before the rule change was finalized, Defendant attempted to forestall this change through issuance of Lancaster Urgency Ordinance No. 886 ("Ordinance 886") on August 14, 2007, which placed a 45-day moratorium on the conversion of any mobile home park in Defendant's borders with at least 80% of its residents aged 55 or older (80-55 Requirement), to an all-age park. (PGI ¶ 14.) The 80-55 Requirement is consistent with a similar requirement in the Federal Fair Housing Act and the Fair Housing Act Amendments Act of 1988 (collectively, "FHA") providing protections to certain retirement or near-retirement communities from conversion to all-age residential facilities (the "Senior Housing Exception" to non-discrimination rules). 42 U.S.C. § 3607(b)(2)(C). Defendant extended this moratorium an additional ten-and-a-half months through Urgency Ordinance No. 887 ("Ordinance 887") on October 11, 2007. (PGI ¶ 15.) In spite of Defendant's efforts, Plaintiffs finalized implementation of the All-Age Rule on January 1, 2008 and Sherwood began running as an all-age park immediately thereafter. (PGI ¶ 17; DGI ¶ 21.)

Parties disagree as to Plaintiffs' motivation for the All-Age Rule. Defendant claims that this move was made "to expand the market of potential residents in order to fill up the park," whereas Plaintiffs urge that the primary reason for the change was "to comply with the dictates of the [FHA]." (*See* PGI ¶ 13.) Both of these claims are based on the same letter written by Plaintiffs' counsel to Defendant's counsel stating these two reasons for the conversion. (PGI ¶ 13.) Plaintiffs additionally assert that a diligence review by Mr. Garcia revealed that Plaintiffs had no information relating to the ages of their residents, and that therefore they could not justify maintaining Sherwood as an age-specific park.[1] (DGI ¶¶ 10-18; *see* Decl. of Ruben A. Garcia in Supp. of P Mot. ("Garcia Declaration 1") ¶¶ 4-9, ECF No. 32.)

Defendant has passed several ordinances relating to Plaintiffs' status after Plaintiffs apparently began operating Sherwood as an all-age park. On June 10, 2008, it passed Ordinance No. 900 ("Ordinance 900"), which added new zoning classifications specific to mobile home parks, including a "senior mobilehome [sic] district overlay" ("MHP_S Overlay") that would be subject to the 80-55 Requirement. (DGI ¶¶ 29-30.) Ordinance 900 purports to retroactively apply the MHP_S Overlay to any mobile home park meeting the 80-55 Requirements as of August 14, 2007. (DGI ¶¶ 29-31.) It also offers the following definition relating to the 80-55 Requirement:

---

[1] Defendant challenges the foundation for Plaintiffs' determinations, arguing that Mr. Garcia has established no basis for his statements relating to the diligence review, that Mr. Garcia's statement itself is not the best possible evidence for its assertions, and that it contains inadmissible hearsay and legal conclusions. (DGI ¶¶ 10-18.) The Court addresses Defendant's objections below.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>          **DATE:** <u>March 13, 2013</u>

"Senior Mobilehome Park" is a mobile home park in which at least 80 percent of the spaces are occupied by **or intended for occupancy by** at least one person who is 55 years of age or older, or in which 100% of the spaces are occupied **or intended for occupancy by** persons 62 years of age or older.

(PGI ¶ 19; DGI ¶¶ 27-28 (emphasis added).) On August 16, 2010, The City of Lancaster Planning Commission ("Planning Commission") adopted Resolution No. 10-35 ("Resolution 10-35"), which recommended application of the MHP_S Overlay to Sherwood and two other mobile home parks. (DGI ¶¶ 32-35, 37.) Defendant approved this recommendation in Ordinance No. 952, passed on October 12, 2010. (DGI ¶ 36.)

Defendant has not formally punished Plaintiffs for their implementation of the All-Age Rule; it has not issued any citations, formal notices of violation, nor brought any civil or criminal lawsuits against Plaintiffs. (PGI ¶ 18.) This is equally true with respect to Ordinance 886, Ordinance 887, Ordinance 900, and Ordinance 952 (collectively, "City Ordinances"). (DGI ¶ 38.) However, Defendant has been in communication with Plaintiffs relating to the rules on several occasions. For instance, on July 12, 2010, Defendant sent a letter to Plaintiffs informing them of the MHP_S Overlay and advising them that they were "required" to operate as a senior mobile home park. (DGI ¶ 40.) This resulted in a series of communications, with the result that Defendant continued to insist that the MHP_S Overlay applied to Sherwood. (DGI ¶¶ 41-45.) Over a year later, on December 12, 2011, Defendant sent Plaintiffs another letter reasserting that Plaintiffs were subject to the 80-55 Requirement. (DGI ¶¶ 47-48.) Plaintiffs claim that in unrecorded telephone conversations Defendant's representatives have accused Waterhouse of being a "white-collar criminal" and indicated that Defendant will take various enforcement actions against Plaintiffs, including rescinding Plaintiffs' "Permit to Operate."[2] (PGI ¶ 18-1; see Decl. of Kevin Waterhouse in Opp'n to D Mot. ("Waterhouse Declaration") ¶¶ 3-4, ECF No. 51.)

Plaintiffs allege that Defendant's actions have prevented the lawful development of Sherwood as an all-age park. Specifically, they claim that would-be residents hoping to live in Sherwood were dissuaded by the City Ordinances from living there because they feared they might be forced to move once the City Ordinances were enforced. (Decl. of Ruben A. Garcia in Opp'n to D Mot. ("Garcia Declaration 2") ¶ 11, ECF No. 50.) They maintain that the City Ordinances have emboldened Sherwood's current residents to harass other residents without someone over the age of 55 living in their residence and causing some of them to move away. (Garcia Decl. 2 ¶ 12.)

Allegedly based in part on their belief that Defendant would soon initiate formal enforcement actions (DGI ¶¶ 49-50), Plaintiffs filed their lawsuit on February 2, 2012 (*See* Compl.) and

---

[2] Defendant objects to this evidence on the grounds that it is inadmissible hearsay and contains numerous unsupported conclusions and inadmissible lay opinion. (Evidentiary Objections to Waterhouse Decl., ECF No. 66.) The Court addresses these concerns below.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>          **DATE:** <u>March 13, 2013</u>

amended the complaint on May 22, 2012 (*See* First Am. Compl. ("FAC"), ECF No. 14.)  Defendant filed its motion on January 22, 2013 (D. Mot.), which Plaintiffs have opposed (Opp'n to D Mot. ("D Opp'n), ECF No. 46), and in support of which Defendant has filed a Reply (Reply to D Mot. ("D Reply"), ECF No. 58.)  Plaintiffs filed their own Motion for Summary Judgment on the same day (Mot. for Summ. J. ("P Mot."), ECF No. 35), which Defendant has opposed (Opp'n to P Mot. ("P Opp'n), ECF No. 45), and in support of which Defendant has filed a Reply (Reply to P Mot. ("P Reply"), ECF No. 60.)

II.    <u>DISCUSSION</u>

In this case, Defendant argues that the Court should grant summary judgment against Plaintiffs because (1) the doctrine of equitable estoppel bars Plaintiffs from pursuing their claims; (2) Defendant's zoning activities are not precluded by the FHA; (3) Defendant has not enforced the City Ordinances in any other way; (4) any such enforcement would anyway have been allowable under the Senior Housing Exception of the FHA; (5) Plaintiffs do not have standing to pursue their case; and (6) Plaintiffs' claims are not ripe for adjudication.  (*See* D Mot.)

By contrast, Plaintiffs argue that the Court should grant summary judgment against Defendants because (1) they are "aggrieved persons" under the meaning of the FHA and thus have standing to pursue their claims;  (2) Sherwood does not qualify as senior housing within the Senior Housing Exemption of the FHA; and (3) the City Ordinances therefore violate and are preempted by the FHA's anti-discrimination provisions in seeking to impose the 80-55 Requirement on Sherwood.  (*See* P Mot.)

A.    <u>Legal Standard for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 325.  Rather, the moving party's initial burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 12-00923 SJO (SHx)**          **DATE:** **March 13, 2013**

must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See Anderson*, 477 U.S. at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

To resolve the present motions for summary judgment, the Court first addresses evidentiary objections and then turns to the substance of the parties' arguments.

A.     Evidentiary Objections

Defendant raises a number of objections to three declarations filed by Plaintiffs; two by Mr. Garcia, and one by Waterhouse. The Court addresses each of these sets of objections in turn.

1.     Garcia Declaration in Support of P Motion

Defendant raises 10 objections to Mr. Garcia's statement in support of Plaintiffs' Motion. (Pls.' Resp. to Def.'s Evidence Objections to Garcia Decl. 1 ("Garcia Objections 1"), ECF No. 55.) The Court declines to address Objection Nos. 1, 2, 3, 7, and 10, because the evidence being challenged does not affect the outcome of this case. (Garcia Objections 1, Nos. 1-3, 7, 10.) Further, Defendant's Objection No. 8 is a question of semantics—whether Defendant's zoning activities constitute "enforcement" of the 80-55 Requirement is resolved later based on factual evidence, and Plaintiffs' statements to that effect do not affect the Court's decision either way. (Garcia Objections 1, No. 8.) And Mr. Garcia's statement describing a letter sent from Defendant to Plaintiffs is superfluous because the Court is already in possession of the letter described. Defendant's Objection 9 thus would not affect the evidence before this Court. The Court therefore **OVERRULES AS MOOT** Objection Nos. 1, 2, 3, 7, 8, 9, and 10.

Defendant next objects to Mr. Garcia's statement that he found no historical surveys or other records purporting to demonstrate compliance with the 80-55 Requirement, on the grounds that the statement lacks foundation and constitutes inadmissible lay opinion. (Garcia Objections 1, No. 4; *see* Garcia Decl. 1 ¶¶ 4-7.) Neither of these arguments is convincing. Rule 602 of the Federal Rules of Evidence ("FRE") permits non-expert witnesses to testify only as to matters over which they have personal knowledge. Fed. R. Evid. 602. And FRE 701 similarly limits testimony by non-experts to facts "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Here, Mr. Garcia is testifying that, as manager of Sherwood's records, he was unable to identify any records or other documents demonstrating compliance with the 80-55 Requirement. This statement is based on Mr. Garcia's review of Sherwood's records, which are definitely within the scope of his personal knowledge. And Mr. Garcia would not have needed any technical or legal knowledge to draw this

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 12-00923 SJO (SHx)          **DATE:** March 13, 2013

conclusion—he simply had to review the record, and in fact does not draw a conclusion as to whether Sherwood in fact had met the 80-55 Requirement. It is thus appropriate testimony, and the Court **OVERRULES** Objection No. 4.

Defendant objects to Mr. Garcia's claim that fewer than half of Sherwood's Tenant Files contain information on the ages of their residents. (Garcia Objections 1, No. 5; *see* Garcia Decl. 1 ¶ 8.) The primary basis for this objection is Defendant's argument that Mr. Garcia's description of the documents is not the best evidence available to support that claim, although Defendant also raises similar arguments about foundation and lay opinion discussed above (overruled for the reasons already stated). (Garcia Objections 1, No. 5.)[3] The Best Evidence Rule ("FRE 1002") requires an "original writing" to prove the content of that writing except as provided otherwise. Fed. R. Evid. 1002. Here, the Tenant Files are certainly original writings within the meaning of FRE 1002. However, Mr. Garcia's statement does not fall within the traditional purview of FRE 1002. As the Ninth Circuit has held, "the best evidence rule does not apply to 'testimony that books or records have been examined and found not to contain any reference to a designated matter.'" *United States v. Diaz-Lopez*, 625 F.3d 1198, 1202 (9th Cir. 2010) (quoting Fed. R. Evid. 1002). Here, Mr. Garcia has gone through the database of Tenant Files and testified that they did not contain information on tenants' ages. Pursuant to *Diaz-Lopez*, the Best Evidence Rule cannot serve as a basis for excluding this testimony. Because no other legitimate justification has been provided to exclude Mr. Garcia's testimony here, the Court **OVERRULES** Objection No. 5.

Defendant objects to Mr. Garcia's statement that, after meeting with legal counsel and Waterhouse, he concluded that Sherwood had "never met" the 80-55 Requirement on the basis that this is a legal conclusion and inadmissible lay opinion. (Garcia Objections 1, No. 6; *see* Garcia Decl. 1 ¶ 9.) Plaintiffs respond that the statement is admissible as state of mind evidence demonstrating Plaintiffs' motivations for publishing the All-Age Rule, and as an admission against interest. Plaintiffs are correct that this conclusion may be admissible as state-of-mind evidence, but this does not make it admissible as evidence that Sherwood in fact never met the 80-55 Requirement. Plaintiffs' other justifications are unconvincing: this is not a statement against interest, because the statement helps Plaintiffs achieve their ultimate goals, to convert to an all-age park; and their further arguments that the conclusion is within Mr. Garcia's expertise are belied by the fact that he reached this conclusion after discussing with legal counsel. The Court therefore **SUSTAINS IN PART** Objection No. 6.

2.     Garcia Declaration in Opposition to D Motion

Defendant raises eight additional objections to Mr. Garcia's Declaration in Opposition to the D Motion. (*See* Pls.' Resp. to Def.'s Evidence Objections to Garcia Decl. 2 ("Garcia Objections 2"), ECF No. 67.) The Court declines to address Objection No. 1, because the evidence being

---

[3] Defendant further objects to the use of certain terms in the testimony. (Garcia Objections 1, No. 5.) The Court declines to address these arguments because the objected-to language does not affect the Court's decision here.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>          **DATE:** <u>March 13, 2013</u>

challenged does not affect the outcome of this case. (Garcia Objections 2, No. 1.) Defendant's objection to Mr. Garcia's testimony summarizing Ordinance 886, that Mr. Garcia makes unsupported conclusions as to the legality of the Ordinances, is off base: that testimony does not contain any legal conclusions. (Garcia Objections 2, No. 2.) The Court therefore **OVERRULES AS MOOT** Objection Nos. 1 and 2.

Defendant further objects to Mr. Garcia's testimony that other park managers have discussed this with Defendant (as hearsay), and that prospective tenants have been turned away or deterred from moving in because they fear living in Sherwood unlawfully and facing increased harassment from older tenants (as lacking foundation). (Garcia Objections 2, Nos. 3-4; *see* Garcia Decl. 2 ¶¶ 10-12.) Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Rule 801(d)(2) provides that a statement is not hearsay if it is "offered against a party" and is "the party's own statement either in an individual or a representative capacity." Fed. R. Evid. 801(d)(2)(A). Here, Mr. Garcia attempts to describe conversations held between other park managers and Defendant's agents, presumably learned through conversations with the other park managers. These other managers' words are being offered to prove that what they said is correct. Thus, Mr. Garcia's testimony relating to the other park managers is clearly hearsay.

Defendant is correct that proscriptions against hearsay testimony and speculation also render inadmissible Mr. Garcia's testimony relating to prospective tenants' motivations. Mr. Garcia can have no personal knowledge why prospective tenants either leave or decline to rent; and similarly cannot know personally where they move instead. And to the extent Mr. Garcia might have gleaned such motivations from existing or prospective tenants, such statements are clearly hearsay. That said, Mr. Garcia does have personal knowledge of Sherwood's record books, and thus has access to statistical information relating to the number of families moving away or declining to move in. His testimony relating to overall numbers of tenants is admissible, just not testimony seeking to ascribe reasons for these patterns. The Court therefore **SUSTAINS IN PART** Objection Nos. 3, 4, and 5.

Defendant also objects to Mr. Garcia's statements relating to alleged conversations with Defendant's Housing Director, Elizabeth Brubaker ("Ms. Brubaker"), where Ms. Brubaker allegedly "made it clear . . . that the City would use all enforcement means at its disposal to make sure that Sherwood complies." (Garcia Objections 2, No. 6; *see* Garcia Decl. 2 ¶ 13.) Defendant objects that this testimony is hearsay.[4]  Under the FRE, an opposing party's statement may include statements "made by a person whom the party authorized to make a statement on the subject" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(C)-(D). Here, Ms. Brubaker is clearly Defendant's agent,

---

[4]  Defendant also objects to Mr. Garcia's statement that he told Ms. Brubaker Sherwood did not meet the 80-55 Requirement, on the basis that he has no expertise to make that assessment. (Garcia Objections 2, No. 6.) Mr. Garcia's testimony here simply says that this conversation occurred, however; not that the conclusions are correct.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-00923 SJO (SHx)**          **DATE:  March 13, 2013**

and was authorized to discuss the matter on behalf of Defendant.  Thus, the testimony is not hearsay and the Court **OVERRULES** Objection No. 6.

Finally, Defendant objects to Mr. Garcia's summary of Plaintiffs' costs, administrative and otherwise, resulting from the need to respond to the City Ordinances. (Garcia Objections 2, Nos. 7-8; *see* Garcia Decl. 2 ¶¶ 14-15.)  The basis for these objections is a lack of documentary evidence.  These objections have some merit, but it is clear to the Court that Plaintiffs must have suffered legal and administrative costs resulting from the present dispute.  The amount is not relevant at this time, and so the Court **OVERRULES AS MOOT** Objection Nos. 7 and 8.

3.      Waterhouse Declaration in Opposition to D Motion

Defendant raises five objections to the testimony of Waterhouse in opposition to Defendant's Motion.  (*See* Pl.'s Resp. to Def.'s Evidence Objections to Waterhouse Decl. ("Waterhouse Objections"), ECF No. 68.)  This evidence primarily addresses an alleged conversation between Waterhouse and the City Manager, a representative of Defendant.  Defendant's objection that this evidence is hearsay is without foundation because the City Manager is Defendant's Agent so it is an opposing party statement.  (Waterhouse Objections, No. 1.)  Defendant's objection that Waterhouse has no basis for his legal conclusions is without foundation because Waterhouse testifies only as to what he said and not as to the veracity of those statements.  (Waterhouse Objections, Nos. 2, 3.)  Defendant's objections to Waterhouse's use of language do not affect the outcome of this case, and so are irrelevant.  (Waterhouse Objections, Nos. 3, 4.)  And Defendant's objection to Waterhouse's reference to a letter sent by Defendant to him is irrelevant because the Court already has the letter at issue in its possession.  (Waterhouse Objections, No. 5.)  The Court therefore **OVERRULES** all objections to the Waterhouse Declaration.

B.      Standing

Article III of the Constitution limits the exercise of judicial power to "Cases" and "Controversies."  U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  For a case to satisfy a federal court's case-or-controversy requirement, Article III, Section 2 requires an "irreducible" minimum of standing.  *Id.* at 560.  "The plaintiff has the burden of establishing the three elements for Article III standing: (1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61)).    Defendant questions Plaintiffs' ability to establish any of these three requirements.

1.      Injury in Fact

Under the injury-in-fact requirement, a plaintiff must show "it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  In the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 12-00923 SJO (SHx)**          DATE: **March 13, 2013**

context of the FHA, the Supreme Court has held that "claims brought under the [FHA] are to be judged under a very liberal standing requirement." *Harris v. Itzhaki*, 183 F.3d 1043, 1049 (9th Cir. 1999).  The FHA "extend[s] to the full limits of Art[icle] III."  *Coleman*, 455 U.S. at 372.

Any "aggrieved person" can bring a complaint under the FHA.  42 U.S.C. § 3613.  The FHA provides a broad definition for "aggrieved person," which includes "any person who[:] (1) claims to have been injured by a discriminatory housing practice; or (2) **believes that such person will be injured by a discriminatory housing practice that is about to occur**."  *Id.* § 3602(i) (emphasis added).  "The phrase 'is about to occur' applies to a number of situations in which it is clear to a person that, if he or she takes an action, he or she will be subjected to a discriminatory act which will result in an injury."  Preamble II, 24 C.F.R. ch. 1, subch. A, app. 1, 54 Fed. Reg. 3232-01, 3238 (Jan. 23, 1989).  Thus, consistent with *Lujan*, standing under the FHA does not require an aggrieved person to first suffer an injury before bringing a claim under the statute if the discriminatory act is imminent.  42 U.S.C. § 3602(i)(2); *Lujan*, 504 U.S. at 560.

Section 3602 does not provide a concrete definition for "injury," but injuries typically arise under the FHA where a plaintiff has been denied a housing opportunity as a result of a defendant's discrimination.  *See, e.g.*, *Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988).  An injury is not as readily identifiable—and thus, standing issues arise—where the plaintiff alleges an injury as a result of discrimination against third persons.  In such circumstances, a claim is properly asserted under the FHA where a plaintiff can demonstrate that a defendant's discrimination against third persons resulted in a "genuine[] injury" to the plaintiff.  *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979).  Such injuries include, but are not limited to, economic injuries.  *See id.* at 111-12 (recognizing an injury where discrimination resulted in loss of "social and professional benefits of living in an integrated society").

In this case, Plaintiffs allege that Defendant's actions impose four discrete injuries upon Plaintiffs: (1) economic harm from families steered away from living in Sherwood; (2) economic harm from administrative costs fighting Defendant's actions; (3) reputational harm to Plaintiffs' status as a lawfully managed mobile park; and (4) imminent economic harm from anticipated enforcement of the City Ordinances. (D Opp'n 9-11.)  The Court may quickly dispense with three of these alleged injuries based on insufficient factual basis.  First, although Mr. Garcia provides a declaration detailing conversations with numerous families deterred from living in Sherwood due to the City Ordinances (Garcia Decl. 2 ¶¶ 11-12), these conversations are inadmissible as hearsay.  Similarly, Plaintiffs have not provided the Court with a copy of the Tenant Files, which might have supported Mr. Garcia's assertion that the City Ordinances have caused an age-specific resettlement pattern in Sherwood.  Thus, Plaintiffs have provided no admissible evidence demonstrating economic harm from lost renters.  Second, economic harm incurred in legal challenges (*see* Garcia Decl. 2 at ¶ 14) cannot itself serve as a basis for standing.  Although Plaintiffs may challenge Defendant's actions, they may not create redressable injuries for themselves simply by incurring expenses in pursuing such challenges, in this Court or in any other.  And third, Plaintiff has not provided any declarations or other evidence demonstrating how their claimed reputational harm might constitute an injury in fact. (D Opp'n 10.)  Simply claiming such reputational harm with no support cannot imbue a party with standing without factual support.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 12-00923 SJO (SHx)**            **DATE: March 13, 2013**

Plaintiffs' fourth claimed injury, based on imminent economic harm from anticipated enforcement of the City Ordinances, does provide a basis for standing. Both Mr. Garcia and Waterhouse have testified that they had personal conversations with two separate agents of Defendant, who expressed an intention to enforce the City Ordinances against Plaintiffs in the near future. (Garcia Decl. 2 ¶ 13; Waterhouse Decl. ¶¶ 3-4.) Such enforcement allegedly could include shutting down Sherwood, fining it severely, or other similar actions that clearly create an economic harm. On a motion for summary judgment, the Court cannot weigh the credibility of evidence presented; only its presence or absence thereof. Mr. Garcia's and Waterhouse's declarations constitute sufficient evidence at this stage in the litigation to support their claims that Defendant had imminent plans to enforce the City Ordinances, and so a jury could reasonably find that Plaintiffs have sustained injuries that demonstrate injury in fact.

2.    Traceability

The second element of standing requires that the plaintiff be able to trace the "injury and conduct complained of" to the alleged actions of the defendant. *Lujan*, 504 U.S. at 560. An injury resulting from an absent third party's actions does not satisfy this requirement. *See id.* Here, it is clear that Defendant is the alleged imminent cause of Plaintiffs' injuries. Plaintiffs clearly meet this prong of the standing inquiry.

3.    Redressability

The third and final element necessary to establish standing under Article III is redressability. The party invoking the protection of the court must demonstrate that there is a "substantial likelihood that the requested relief will remedy the alleged injury." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks omitted). Plaintiffs' FAC requests the following relief: (1) a declaration that the City Ordinances are invalid as contrary to the FHA; (2) an injunction against any activities seeking to prevent people of all ages from living in Sherwood; (3) compensatory damages sufficient to compensate Plaintiffs for their injuries in this case; (4) statutory damages pursuant to the FHA; and (5) other miscellaneous fees and costs. (FAC, Prayer for Relief.) It is clear that the requested relief would remedy Plaintiffs' alleged injuries and restore their alleged rights here. Plaintiffs thus satisfy the redressability prong of the standing requirement.

For the foregoing reasons, and in light of the FHA's liberal standing requirement, the Court holds that Plaintiffs have established standing to pursue this case.

C.    Ripeness

In addition to demonstrating recoverable injuries, Plaintiffs also must demonstrate that the claims presented are ripe for judicial resolution. "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring . . . that claims be ripe for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (internal quotation marks omitted). The purpose of the ripeness doctrine is "to prevent the courts, through

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-00923 SJO (SHx)**          **DATE:  March 13, 2013**

avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect [decision makers] from judicial interference until a . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality v. Dep't of the Interior*, 538 U.S. 803 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  This determination asks the courts to evaluate two issues: (1) "the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration."  *Abbott*, 387 U.S. at 149.

Courts evaluate the "fitness of the issues for judicial decision" by asking whether court involvement would interfere with the administrative action and whether courts would benefit from a more thorough factual development of the issues. *Ohio Forestry Ass'n v Sierra Club*, 523 U.S. 726, 733. The "hardship to the parties of withholding court consideration" inquiry asks whether the complained-of action either harms the plaintiff or threatens to harm the plaintiff through some concrete action applying the rule to the claimant's situation.  *Lujan*, 497 U.S. at 892.  Notably, mere uncertainty as to the validity or effects of a legal rule does not constitute a hardship for purposes of the ripeness analysis.  Plaintiffs must suffer immediate harm due to the challenged activity in order for the case to be ripe.  *Reno v. Catholic Social Servs.*, 509 U.S. 43, 58-59 (1993) (dismissing as unripe a challenge to immigration benefit regulations rules until an application for such benefits was actually denied).

       1.   <u>Fitness for Judicial Review</u>

Of the two issues the Court must address in its ripeness inquiry, the question of fitness for judicial review is more easily resolved.  Defendant here has already issued the City Ordinances, which collectively clearly state that Sherwood is subject to the 80-55 Requirement.  (PGI ¶¶ 14-16, 21-24; DGI ¶¶ 29-31, 35-36.)  And although the parties have communicated several times as to the validity of the City Ordinances, there is no ongoing administrative action with which the Court might interfere by ruling on this case.  (DGI ¶¶ 40-48.)  Thus, there is no immediately apparent reason to delay a decision on this matter.

Defendant argues that the case is not fit for judicial review because Plaintiffs have failed to pursue administrative review of the City Ordinances.  Specifically, Defendant urges that Plaintiffs should have used Lancaster Municipal Code ("LMC") 17.24.010 et seq. to petition for a zoning change that could have removed Sherwood from the MHP_S Overlay.  (D Mot. 22-23.)  The question the Court must resolve here though is not whether Plaintiffs could have used alternative dispute resolution bodies,[5] but whether ruling at this point would interfere with ongoing disputes elsewhere,

---

[5]  Defendant may be conflating ripeness doctrine with exhaustion doctrine, which in many circumstances requires that parties fully pursue all possible administrative remedies before filing suit in an Article III court; but an exhaustion-based argument would fail regardless. As the Supreme Court has held, "[t]he federal remedy is supplementary to the state [or local] remedy, and the latter need not be first sought and refused before the federal one is invoked."  *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (overruled on other grounds).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-00923 SJO (SHx)          DATE:  March 13, 2013**

or whether the Court would benefit from further factual development of the issues.  *Ohio Forestry Ass'n*, 523 U.S. at 733. Neither is the case here: there are no ongoing hearings that might be disturbed, and the factual issues here are not so complicated that the Court would benefit from further development.  Thus, this prong of the ripeness inquiry weighs in favor of immediate resolution of the case.

> **2.      Hardship of Withholding Consideration**

The more difficult question to resolve is whether Plaintiffs would be sufficiently harmed by the Court's withholding of consideration to justify immediate resolution of this case.  As explained above, the evidence presented does not support any finding that Plaintiffs have yet sustained any business injuries as a result of Defendant's publication of the City Ordinances. And Defendant has thus far declined to initiate any enforcement actions based on the City Ordinances, with the result that practically speaking Plaintiffs have been allowed to operate as before, albeit illegally.  (PGI ¶ 18; DGI ¶ 38.)  Taken alone, these circumstances do not appear to satisfy the requirements of ripeness: the mere existence of a rule contrary to the law does not necessarily impose hardship sufficient to justify judicial redress.  *See Reno*, 509 U.S. at 58-59 ("[C]ourts traditionally have been reluctant to apply [injunctive remedies] . . . unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties.").  In the absence of sufficient facts demonstrating actual monetary damages, such claims normally fail.

The difficulty for Defendant here, however, is that it has in fact taken steps to apply its laws to Sherwood.  The Supreme Court has held that past enforcement is **not** a necessary prerequisite for ripeness:

> In some cases, the promulgation of a regulation will itself affect parties concretely enough to satisfy [the ripeness] requirement, as it did in *Abbott Laboratories* itself. There, for example, as well as in *Gardner v. Toilet Goods Assn., Inc.* . . . the promulgation of the challenged regulations presented plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation.

*Reno*, 509 U.S. at 57.  Here, Defendant's agents have contacted Plaintiffs on multiple occasions informing Plaintiffs that Sherwood is subject to the City Ordinances imposing the 80-55 Requirement.  (DGI ¶¶ 40, 48; *see* Garcia Decl. 1, Exs. 9, 14.)  These letters have not just informed Plaintiffs of the City Ordinances; they have explained in detail that Sherwood must comply, given instructions for compliance, requested compliance, and alluded to an inspection of Sherwood to determine the extent of noncompliance. (Garcia Decl. 1, Exs. 9, 13, 14.) Defendant claims that it has taken no steps toward enforcement of the City Ordinances, but its actions follow

_____

Defendant provides a local remedy for Plaintiffs' complaints (D Mot. 23), but Plaintiffs were not required to utilize this method before bringing their claim in federal court.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>       **DATE:** <u>March 13, 2013</u>

a pattern of imposition and indicate an intent to see the City Ordinances enforced in full. Defendant here appears to be trying to have it both ways, browbeating Plaintiffs into compliance while carefully avoiding affirmative steps that would clearly trigger judicial review. This Court will not allow such a tactic to succeed; local governments cannot be allowed to intimidate private entities into compliance with ordinances of questionable legality, and thereby clearly undermine private entities' rights to challenge local laws in court.

The Court's conclusion here is strengthened by Plaintiffs' declarations indicating that, in private conversations, city officials threatened imminent enforcement of the City Ordinances against Plaintiffs. Defendant asks the Court to consider the following statement in the FAC as self-evident proof that Plaintiffs' claims are not ripe:

> As a result of [Defendant's] threats, Plaintiffs must either discriminate against families with children that are interested in occupying spaces or mobilehomes [sic] in Sherwood MHP, or face civil and criminal enforcement measures by Lancaster.

(D Mot. 21; *see* FAC ¶ 47.) But this is exactly the catch-22 in *Abbott Laboratories* that prompted the Supreme Court to determine that the plaintiff's claims were ripe for judicial resolution. Thus, the Court finds that Plaintiffs' claims are ripe for review and may address the remaining issues in the case.

   D.   <u>FHA Claims</u>

The Court now turns to the substance of the parties' FHA claims to resolve the remaining issues on summary judgment. Under the FHA, it is unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status.

> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status.

> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>        **DATE:** <u>March 13, 2013</u>

     (d) To represent to any person because of . . . familial status . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

42 U.S.C. § 3604(a)-(d) ("Sections 3604(a)-(d)").  "Familial status" here means one or more minors being domiciled with a parent or parental designee.  42 U.S.C. § 3602(k).  Sections 3604(a)-(d) operate in conjunction with 42 U.S.C. § 3617, which provides:

     It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or **on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right** granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617 ("Section 3617") (emphasis added).  Plaintiffs here bring suit alleging that Defendant has violated Sections 3604(a)-(d), as well as Section 3617.  (*See* FAC.)

As an initial matter, Plaintiffs' claims under Sections 3604(a)-(d) cannot continue.  These sections impose prohibitions on parties against refusing to sell or rent housing, giving unfavorable contracts, or publicizing or otherwise representing an intention to do either of the above, based on family status.  42 U.S.C. §§ 3604(a)-(d).  Defendant here has done none of those things, because Defendant is not in the business of managing Sherwood, nor have Plaintiffs provided any evidence suggesting that Defendant has actively interfered with Plaintiffs' efforts to sell or rent units in Sherwood.  Sections 3604(a)-(d) ban directly discriminatory activities in the actual sale or rental of housing units, and this simply does not apply here.  No jury could reasonably find, based on the facts presented, that Defendant even participated in sale or rental of housing units, let alone discriminated therein, and so the Court **GRANTS** Defendant's Motion with respect to Counts I through IV of the FAC.

By contrast Plaintiffs' final request for relief, based on Section 3617, does not require direct discrimination in the sale or rental of housing units.  Instead, it establishes liability over parties who interfere with the direct housing providers' attempts to be nondiscriminatory.  42 U.S.C. § 3617.  Based on the facts summarized above, Plaintiffs here have provided sufficient evidence that Defendant passed zoning regulations and sent multiple letters to Plaintiffs telling them that they were required to comply with these regulations.  This can easily be classified  as coercion, intimidation, or interference with Plaintiffs' rental activities, and therefore qualifies under Section 3617.  Assuming families attempting to live in Sherwood have a right under Sections 3604(a)-(d) to apply for housing there, Plaintiffs have sufficiently established that Defendant interfered with that right.  Thus, a jury could reasonably find that Defendant violated Section 3617 of the FHA, and the Court declines to issue judgment in favor of Defendant on Count V of the FAC.

Defendant argues that Plaintiffs' claims under Section 3617 cannot succeed because zoning activities do not, in and of themselves, constitute a discriminatory housing practice within the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 12-00923 SJO (SHx)**          **DATE:**  **March 13, 2013**

meaning of the FHA.  (D Mot. 12-13.)  In support of this assertion it cites to a Seventh Circuit case that observes that "[z]oning may be good or bad, but the FHA[] is not the charter of its abolition. *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999).  The Court may dispose of this argument without addressing the applicability of *Hemisphere Building* to this case, though: per above, Plaintiffs have provided facts demonstrating that Defendant did not merely pass a zoning requirement; it then took affirmative steps to enforce that requirement, possibly even by threatening future enforcement.  Defendant's assertion that its actions here are limited to "mere zoning ordinances" is patently false, and so its arguments must fail here.

> 1.    The Senior Housing Exception

The central issue to Plaintiffs' case is whether families have a right under Sections 3604(a)-(d) to live in Sherwood.  This question necessarily depends on whether Sherwood qualifies for the FHA's Senior Housing Exception.  Under the FHA, the protections in Sections 3604(a)-(d) are limited as follows:

> (b)(1) No[] . . . provision in this subchapter regarding familial status appl[ies] with respect to housing for older persons.
>
> (2) As used in this section, "housing for older persons" means housing . . . (C) intended and operated for occupancy by persons 55 years of age or older, and—(i) at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older; (ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and (iii) the housing facility or community complies with rules issued by the Secretary [of Housing and Urban Development ("HUD" or "Secretary")] for verification of occupancy.

42 U.S.C. § 3607(b) ("Section 3607(b)").  To the extent that Sherwood qualifies for this exception, both parties agree that the City Ordinances comply with the FHA and the Court must grant summary judgment in favor of Defendant.  (D Mot. 16-18; P. Mot. 14.)  This is confirmed by the Ninth Circuit's ruling in *Putnam Family Partnership v. City of Yucaipa, California.*  673 F.3d 920, 925-26 (9th Cir. 2012).

> i.    Equitable Estoppel

Defendant first argues that Plaintiffs must be equitably estopped from asserting that Sherwood does not qualify for the Senior Housing Exception because their past actions have all indicated compliance with that requirement.  (D Mot. 9-11.)  Equitable estoppel is a doctrine that prevents parties "from asserting rights which might perhaps have otherwise existed" "after another party has been led to form a reasonable belief that the right would not be asserted."  *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970); *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 847 (9th Cir. 2012).  It is intended to prevent parties from taking advantage of the law

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 12-00923 SJO (SHx)          **DATE:** March 13, 2013

where the party "has so conducted [itself] that it would be contrary to equity and good conscience" to permit the party to prevail.  *Granite State Ins. Comp. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

Under California law, a showing of equitable estoppel requires four findings: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *California State Bd. of Equalization v. Coast Radio Prods.*, 228 F.2d 520, 525 (9th Cir. 1955) (citing to 18 Cal. Jur. 2d 406).  The Ninth Circuit has held that a "finding of estoppel must rest on consideration of several factors," including (1) "a showing of [one party's] actual and reasonable reliance on the [other party's] conduct or representation"; (2) "evidence of improper purpose on the part of the [other party], or of the [other party's] actual or constructive knowledge of the deceptive nature of its conduct"; and (3) "the extent to which the purposes of the [time] period have been satisfied." *Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981).

The Court does not see any connection between the law of equitable estoppel and the facts described in this case.  Defendant's argument appears to be essentially that because Plaintiffs apparently operated Sherwood as a senior facility for many years, they cannot change that now because Defendant relied on their belief that Plaintiffs had the appropriate records in passing the City Ordinances.  (D Mot. 9-10).  As a result of this reliance, Defendant argues, Plaintiffs cannot now claim that they do not have age information in their Tenant Files sufficient to justify Sherwood's senior status.  (D Mot. 10.)  This argument fails on many levels.  First, Defendant has not established knowledge of the facts: Plaintiffs have asserted that they do **not** know the ages of their residents, and that they didn't know they were missing this information until very recently.  (Garcia Decl. 1 ¶¶ 4-7.)  Second, Defendant has provided no evidence that Plaintiffs intended Defendant to pass the City Ordinances; to the contrary, Plaintiffs have opposed Defendant's actions at each stage in the process.  And third, most fundamentally, it is not clear what "legal right" Defendant would have this Court preclude; Plaintiffs are asserting facts, not a legal right of any kind.[6]  Thus, there is no basis for the Court to apply equitable estoppel here.

---

[6]  Defendant may be conflating equitable estoppel with promissory estoppel, which establishes obligations on parties to keep promises upon which other parties have relied to their detriment; but Defendant would similarly fail to establish promissory estoppel.  A party claiming promissory estoppel must establish four elements: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by [the] reliance."  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).  Here, Defendant has provided no facts establishing a clear promise by Plaintiffs to Defendant, nor any real injury incurred by Defendant in its alleged reliance on Plaintiffs' representations.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-00923 SJO (SHx)</u>     **DATE:** <u>March 13, 2013</u>

      ii.   <u>Age Verification</u>

The primary FHA dispute between the parties centers on responsibility for age verification. Plaintiffs claim that Defendant was required to verify qualification for the Senior Housing Exception before passing the City Ordinances (P Mot. 16-17), whereas Defendant argues that there is insufficient evidence to establish that the Senior Housing Exception applies, and that at the least Sherwood has not complied with any rules issued by the Secretary for verification of occupancy. (D Mot. 14-15; P Opp'n 15-19.) Pursuant to the requirement in Section 3607(b), the Secretary has laid out requirements for verification of occupancy as follows:

> (a) In order for a housing facility or community to qualify as housing for persons 55 years of age or older, it must be able to produce, in response to a complaint filed under this title, verification of compliance with § 100.305 through reliable surveys and affidavits.

> (b) A facility or community shall, within 180 days of the effective date of this rule, develop procedures for routinely determining the occupancy of each unit, including the identification of whether at least one occupant of each unit is 55 years of age or older. Such procedures may be part of a normal leasing or purchasing arrangement.

> (c) The procedures described in paragraph (b) of this section must provide for regular updates, through surveys or other means, of the initial information supplied by the occupants of the housing facility or community. Such updates must take place at least once every two years.

24 C.F.R. § 100.307. These requirements must be strictly adhered to, because they delineate a narrow exception to the broad FHA protections; as the Supreme Court has held, all exceptions to Sections 3604(a)-(d) must be "read narrowly in order to preserve the primary operation of the [FHA]." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731-32 (1995) (internal quotations omitted).

The responsibility for age verification must lie with the party facing the burden of persuasion on application of the Senior Housing Exception, and so the Court addresses that question first. The Ninth Circuit in *Putnam* held that "[t]he senior exemption is an affirmative defense, for which the defendant has the burden of proving eligibility . . . . Moreover, the defendant must show that all requirements for the senior exemption were met at the time of the alleged discriminatory act." *Putnam*, 673 F.3d at 925.[7] This is borne out in *Balvage v. Ryderwood Improvement and Service*

---

[7] This quote does not refer to the age verification process specifically—the court in *Putnam* explicitly declined to address age verification issues because it deemed them to have been

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 12-00923 SJO (SHx)**          **DATE: March 13, 2013**

*Association, Inc.*, 642 F.3d 765 (9th Cir. 2011), wherein the Ninth Circuit did not allow a facility to apply the Senior Housing Exception because the facility had not established a formal age verification system and could not prove the ages of its residents to the satisfaction of the court. *Balvage* is potentially distinguishable because it involved a housing manager, rather than a governmental entity, but this District has imposed the same requirements on a county government, granting summary judgment against a county trying to justify senior housing zoning because the county did not properly demonstrate compliance with the 80-55 Requirement. *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1079-81 (C.D. Cal. 2002).

The *Gibson* ruling does not bind this court, but its finding is persuasive: requiring individual housing entities seeking to avoid zoning laws to prove that they do **not** meet the 80-55 Requirement would impose unfair costs on such entities and undermine Congress's clear intent in passing the FHA that the Senior Housing Exception remains a "narrow" exception to its "broad" anti-discrimination protections. *See City of Edmonds*, 514 U.S. at 731-32. In short, such a finding would flip the presumption against discrimination that is so fundamental to the FHA. Previous cases in this Circuit addressing the issue have all sided with Congress's clear intent, and this Court sees no reason to hold otherwise here. Thus, Defendant bears the burden of persuasion in its attempts to apply the Senior Housing Exception.

In seeking to avoid this burden, Defendant focuses on the use of the term "housing community or facility" in HUD regulations, and argues that Defendant cannot possibly be considered a housing community, and therefore cannot possibly be held to HUD requirements for age verification. (P Opp'n 16-17.) Defendant's arguments here are unavailing, however. HUD has issued regulations defining "housing facility or community" as "any dwelling or group of dwelling units governed by a common set of rules, regulations or restrictions." 24 C.F.R. § 100.304(b). As part of these regulations, HUD specifically mentioned a "municipally zoned area" as an example of a "housing community." 24 C.F.R. § 100.304(b). Thus, contrary to Defendant's assertion, a "municipally zoned area" counts as a housing community; and cities, as the "managers" of municipally zoned areas, must then be the managing entity responsible for age verification. This conclusion undermines the core of Defendant's arguments, and further strengthens the Court's holding here.

Defendant also cites to *Balvage* and to an Eleventh Circuit case as standing for the proposition that "the responsibility for verification of occupancy lies with a housing provider and not with a zoning authority." (P Opp'n 15;) *see Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472, 1474 (11th Cir. 1993). Defendant is correct that the courts in *Balvage* and *Massaro* hold housing providers to a strict age verification standard, but they do not purport to address the question of local government responsibility: in fact, neither case mentions local government responsibilities at all. *Balvage*, 642 F.3d at 765; *Massaro*, 3 F.3d at 1472. These cases thus do not support Defendant's argument.

———————————————

waived by those plaintiffs, *id. at 932*—but it nonetheless establishes that Defendant has the burden here of demonstrating compliance with Section 3607(b).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   CV 12-00923 SJO (SHx)          **DATE:**  March 13, 2013

Finally, Defendant asserts that it should not, as a matter of policy, be held responsible for age verification at individual facilities because doing so would be formidably difficult against the wishes of housing managers.  (P Opp'n 15-18.)  Specifically, it warns the Court that otherwise "any operator who preferred, as here, to operate an all-ages facility, could contravene city zoning for seniors by withholding information necessary for an exemption." (P Opp'n 18.)  The Court is not insensitive to Defendant's difficulties here; cities seeking to protect their senior housing communities may often encounter difficulties with housing operators seeking to maximize profits. But the answer to this dilemma is not to allow cities to unilaterally impose age requirements on private housing operators without evidence that such zoning actions are lawful under the FHA; this would result in greater inequities, albeit against different parties, than the dilemma itself.  The important point is that cities seeking to protect senior housing communities must take affirmative steps to verify their compliance with the Senior Housing Exception **before** passing the relevant zoning ordinances.

The Court must still run the summary judgment test on this point, however.  "When a plaintiff seeks summary judgment on affirmative defenses, he or she may satisfy the Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case . . . .  While it is not essential that the plaintiff negate elements of the affirmative defenses by submitting affidavits or other evidence, he or she must point to something showing the absence of supporting evidence.  *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 962 (E.D. Cal. 2012).  Here, Defendant has provided evidence to the Court indicating that Sherwood originally operated as an "Adult Park," and that for most of its time in operation its rules required at least one person aged 55 or older to live in each mobile.  (DGI ¶¶ 8-9.)  The evidence further shows that in 2005 Plaintiffs proposed to strengthen these rules further, banning all children from Sherwood completely.  (Brubaker Decl. ¶¶ 7-9.)  Before the All-Age Rule went into place, Defendant passed Ordinance 886, banning conversion of any senior housing facility to an all-age facility, which was its first ordinance allegedly in violation of the FHA.  (PGI ¶¶ 10-14.)  All of these facts taken together could persuade a reasonable jury that Sherwood satisfied the 80-55 Requirement at the time Defendant passed Ordinance 886.  They also could persuade a reasonable jury that the information necessary to demonstrate compliance with the 80-55 Requirement is among Sherwood's records.  Thus, Defendant has satisfied its initial burden of persuasion.

The burden now shifts to Plaintiffs to prove that Sherwood in fact did not meet the age verification requirements for the Senior Housing Exception.  Plaintiffs effectively provide three pieces of evidence in support of this contention.  First, they note that Mr. Garcia did not find any historical surveys or any other summary documentation that indicate that Sherwood met the 80-55 Requirement.  (Garcia Decl. 1 ¶¶ 4-7.)  Second, they reference discussions between several parties where it was concluded that Sherwood does not meet the 80-55 Requirement.  (Garcia Decl. 1 ¶ 9.)  And finally, they note that upon a review of the Tenant Files, Mr. Garcia discovered that fewer than half of them had information as to the age of Sherwood residents.  (Garcia Decl. 1 ¶ 8.)  As an initial matter, the first two pieces of evidence are clearly insufficient to definitively overcome Defendant's initial showing.  Evidence that Mr. Garcia did not find any prior surveys of residents' ages is not definitive: absence of evidence is not evidence of absence.  And Mr.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 12-00923 SJO (SHx)**          **DATE:  March 13, 2013**

Garcia's statement that he concluded that Sherwood does not comply with the 80-55 Requirement does not constitute evidence that in fact Sherwood does not comply.

Mr. Garcia's statement summarizing the Tenant Files and stating that fewer than half of them had age information is Plaintiffs' strongest piece of evidence in support of summary judgment; but it is not enough to justify summary judgment.  Plaintiffs argue that Mr. Garcia's testimony as to the content of the documents is relevant as a "survey" or "affidavit" within the meaning of FHA Section 3607(b).  But Plaintiffs did not provide an official business document as evidence; instead, Mr. Garcia purports to summarize written documents that are in existence and within Plaintiffs' control.  As the Supreme Court notes, "[t]he mere existence of a scintilla of evidence" does not provide a legitimate basis for summary judgment.  *Anderson*, 477 U.S. at 252.  Summary judgment requires a demonstration of evidence about which no jury could reasonably disagree.  Here, a jury could reasonably determine that Mr. Garcia's self-serving summary of the facts is unconvincing, and that Sherwood did in fact comply with the 80-55 Requirement in 2007.  Thus, a triable issue of fact remains whether Sherwood qualified for the Senior Exception at the time Defendant passed Ordinance No. 886 (and by extension the remaining City Ordinances).

iii.   Intent for Senior Community

The second requirement in Section 3607(b) for application of the Senior Housing Exception is that the facility or "community" demonstrate an intent to establish a senior-oriented housing facility.  42 U.S.C. § 3607(b).  Such an intent might most naturally come from the housing manager itself, but a city may also provide that intent through zoning laws.  *Putnam*, 673 F.3d at 928-31.  HUD has issued regulations defining "housing facility or community" as "any dwelling or group of dwelling units governed by a common set of rules, regulations or restrictions."  24 C.F.R. § 100.304(b).  As part of these regulations, HUD specifically mentioned a "municipally zoned area" as an example of a "housing community."  24 C.F.R. § 100.304(b).  HUD has also spoken directly to the intent requirement associated with city zoning:

> An area zoned by a unit of local government as "senior housing" satisfies the intent requirement if: (1) Zoning maps containing the "senior housing" designation are available to the public; (2) Literature distributed by the area describes it as "senior housing"; (3) The "senior housing" designation is recorded in accordance with local property recording statutes; and (4) Zoning requirements include the 55–or–older requirement or a similar provision.

64 Fed. Reg. 16324, 16331, 16332 ex. 2 (Apr. 2, 1999).  Here, Defendant has noted the following: (1) current zoning maps are available to the public and are described in public legislation; (2) this legislation uses the term "Senior mobilehome park"; (3) The designation is in the City Ordinances; and (4) the provision includes the 80-55 Requirement.  ((PGI ¶¶ 14-16, 21-24; DGI ¶¶ 29-31, 35-36; Req. for Judicial Notice in Supp. of D Mot. ("RJN"), ¶ 5, Ex. E, ECF No. 37.)  Thus, Defendant has met the intent requirement for the Senior Housing Exception, in lieu of Plaintiffs.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**


**CASE NO.:   CV 12-00923 SJO (SHx)**          **DATE:** <u>March 13, 2013</u>

Given that Defendant, per above, has demonstrated a triable issue of fact whether Sherwood satisfied the age verification requirements of the FHA at the time Defendant Passed the first of its City Ordinances, and Sherwood clearly satisfies the intent requirement, the Court cannot grant summary judgment against Defendant on the FHA issues.

III.    <u>RULING</u>

For the foregoing reasons the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiffs' Motion for Summary Judgment.  Counts 1, 2, 3, and 4 of the FAC are resolved in favor of Defendant.  The case shall proceed on Count 5 of the FAC in accordance with this Order.

IT IS SO ORDERED.